# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff below, Respondent,**

**vs) 16-0541** (Wetzel County 11-F-15)

**John Michael Howell,**
**Defendant below, Petitioner.**

**FILED**
**April 13, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION
## (ON REHEARING)

The petitioner, John Michael Howell,[1] appeals the portion of the Circuit Court of Wetzel County's May 12, 2016, "Amended Entry of a Plea and Sentencing Order Amended" [sic] specifying that he will be eligible for parole consideration after serving a minimum of fifteen years in prison. He argues that pursuant to statute, he should be eligible for parole after ten years of incarceration. The State of West Virginia responds in support of the circuit court's order, contending that the fifteen-year parole eligibility provision was an express and integral term in the petitioner's plea agreement. However, the petitioner asserts that when accepting a plea bargain, nobody informed him of the applicable parole law or that he was relinquishing any rights regarding parole eligibility.

By memorandum decision filed on October 23, 2017, this Court affirmed the circuit court's order. Subsequently, the petitioner filed a timely petition for rehearing, which was granted on February 7, 2018.[2] Upon rehearing, this Court received supplemental briefs and, on April 3, 2018, heard the oral argument of the parties. For the reasons set forth herein, we now conclude that the petitioner's plea agreement and conviction must be vacated, and the

---

[1]On appeal, Mr. Howell is represented by Keith White, Esquire. The State of West Virginia is represented by Zachary Aaron Viglianco, Assistant Attorney General.

[2]*See* W.Va. R.A.P. 25 (providing for filing of petition for rehearing); *Atlantic Greyhound Corp. v. Public Serv. Comm'n*, 132 W.Va. 650, 665, 54 S.E.2d 169, 177 (1949) (recognizing that granting of petition for rehearing "withdraws an opinion previously rendered and destroys its force and effect" unless opinion is re-adopted) (internal citation omitted).

parties must be returned to their respective positions prior to the plea bargain. Because our decision is based upon settled law, this matter is appropriate for disposition in a memorandum decision pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

## Factual and Procedural Background

In January 2011, the petitioner was indicted on four criminal counts: kidnapping, attempted sexual assault in the second degree, sexual assault in the first degree, and malicious assault. The indictment pertained to conduct he is alleged to have committed against his wife in December 2010. Trial began in January 2016.[3] After a recess in the midst of jury selection, the parties announced to the circuit court that they had reached a plea agreement. The petitioner agreed to plead guilty to the kidnapping charge and to be sentenced to life in prison with mercy. The written plea agreement expressly provided he would be eligible for parole after serving fifteen years in prison:

> It is understood herein that for the Felony offense of **"Kidnapping"** the defendant will be sentenced to **life with mercy**. The defendant will be eligible for parole after serving a **minimum of fifteen (15) years with credit for time served. The defendant understands that he may never be paroled, that matter will be left up to the Parole Board.**

(Emphasis in original). In exchange for this guilty plea, the State agreed to dismiss the remaining counts of the indictment.

The circuit court immediately held a combined plea and sentencing hearing wherein there were repeated references to the petitioner serving fifteen years of incarceration before becoming eligible for parole consideration. For example, the court explained the following to the petitioner:

> Now, as you know, Mr. Howell, you are charged in this court with a series of offenses, one of which is kidnapping, and under the terms of the plea agreement you're to enter a plea–or agree to enter a plea to that offense with the sentence to be life with mercy.
>
> Now, kidnapping with a life with mercy recommendation means that you would be eligible for parole after serving a minimum of 15 years with

---

[3]The appendix record on appeal does not reveal the reasons for the delay in going to trial.

2

credit for time served and that you understand that you may never be paroled; that would be left up to the parole board[.]

After engaging in a plea colloquy, the circuit court determined that the petitioner's guilty plea to the crime of kidnapping was knowing, intelligent, and voluntary. The court proceeded to sentence the petitioner to life in prison with a recommendation of mercy, once again specifying that the petitioner would be "eligible for parole after serving a minimum of 15 years with credit for time served[.]" The circuit court entered a written order on January 7, 2016, memorializing the plea and sentencing.

Thereafter, the petitioner's counsel objected to the contents of the written order.[4] In a March 31, 2016, letter to the circuit court, petitioner's then-lawyer Mark D. Panepinto advised that the fifteen-year parole eligibility period was contrary to law. Specifically, the kidnapping statute provides:

(b) The following exceptions shall apply to the penalty . . . .

(2) If the person pleads guilty, the court may, in its discretion, provide that the person is eligible for parole in accordance with the provisions of article twelve, chapter sixty-two of this code and, if the court so provides, the person is eligible for parole in accordance with the provisions of said article in the same manner and with like effect as if the person had been found guilty by the verdict of a jury and the jury had recommended mercy[.]

W.Va. Code § 61-2-14a(b) (2017).[5] Article twelve of chapter sixty-two, which is the parole statute, provides in relevant part:

An inmate sentenced for life may not be paroled until he or she has served *ten years*, and an inmate sentenced for life who has been previously twice convicted of a felony may not be paroled until he or she has served fifteen years: Provided, That an inmate convicted of first degree murder for an offense committed on or after June 10, 1994, is not eligible for parole until he or she has served fifteen years.

---

[4]The record reflects that the written order was not provided to the defense for review prior to its entry.

[5]Both the kidnapping and the parole statutes have been amended since the petitioner's alleged crimes. However, the changes to the relevant language are stylistic and do not affect the outcome of this appeal, so this decision quotes the current language.

3

W.Va. Code § 62-12-13(c) (2017) (emphasis added).  It is undisputed that the petitioner has no prior felony convictions, thus, pursuant to these statutes, he would be eligible for parole consideration in ten years, not fifteen.  In his letter, Mr. Panepinto told the circuit court of his belief that "all parties, as well as the Court, were mistaken [during the plea/sentencing hearing] relative to the time when Mr. Howell would be eligible for parole pursuant to statute."

The circuit court held a hearing on May 6, 2016, to consider issues regarding its order.[6]  The judge explained that he had been mistaken about the applicable parole eligibility period:

> I will say this:  At the time the plea was entered, I had in my mind that the fifteen-year eligibility date was proper.  Basically, what I had in mind, really, was the first degree murder cases . . . .  But what I had in my mind–and I'm giving you the mental processes–is that with a recommendation of mercy, that means a person would be eligible for parole in fifteen years.  That's what I operated on.

The petitioner requested that the sentencing order be changed to reflect that he would be parole-eligible after ten years of incarceration.  However, the State objected to this modification.  The prosecuting attorney averred that the requirement of serving at least fifteen years in prison was "the essence of the plea agreement[,]"and the State would not have entered into the plea bargain without this provision.

Acknowledging that the fifteen-year provision was specified in the plea agreement, the circuit court denied the petitioner's motion to reduce the parole eligibility period to ten years.  The court made other changes to the written order that are not at issue in this appeal,[7] and an amended plea and sentencing order was entered on May 12, 2016.[8]

---

[6]The petitioner's lawyers also objected to language in the order about the circuit court's offer to recommend parole when the petitioner ultimately appears before the parole board, assuming the petitioner does not commit any improprieties in the interim period.  That issue was resolved before the circuit court and is not pertinent to this appeal.

[7]*See supra* note 6.

[8]In his brief, the petitioner incorrectly refers to this appeal as arising from the denial of a motion filed pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure.  Although the petitioner did file a separate Rule 35 motion, the appendix record reflects that

## Standard of Review

Although a criminal defendant who pleads guilty has ordinarily waived his or her right to appeal, "[a] direct appeal from a criminal conviction based on a guilty plea will lie where an issue is raised as to the voluntariness of the guilty plea or the legality of the sentence." Syl. Pt. 1, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978). Our standard of review is as follows:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

## Discussion

In support of the circuit court's decision, the State argues that the petitioner is bound by the fifteen-year parole eligibility provision because it was clearly set forth in the written plea agreement and was discussed no fewer than five times during the January 2016 plea/sentencing hearing. The petitioner contends that although the fifteen-year period was specified, no one ever told him that the parole statute only requires ten years or that his plea agreement would require him to forgo any rights regarding parole eligibility.

When a criminal defendant pleads guilty, the defendant must be accurately informed of the consequences of the plea: "When a conviction rests upon a plea of guilty, the record must affirmatively show that the plea was intelligently and voluntarily made with an awareness of the nature of the charge to which the plea is offered and the consequences of the plea." Syl. Pt. 1, *Riley v. Ziegler*, 161 W.Va. 290, 241 S.E.2d 813 (1978); *accord* W.Va. R. Crim. P. 11 (requiring trial court to ensure plea of guilty or nolo contendere is voluntary); *Boykin v. Alabama*, 395 U.S. 238 (1969) (finding reversible error when record did not reflect that criminal defendant voluntarily and understandingly entered guilty plea).

In *Riley*, the trial court gave a "misleading explanation" regarding the maximum possible penalty faced by a defendant who was pleading guilty. 161 W.Va. at 292, 241

---

he withdrew it during the May 6, 2016, hearing. In actuality, this is a timely-filed appeal of the amended plea and sentencing order.

S.E.2d at 815. The defendant therein was charged with grand larceny as well as the alternative counts of breaking and entering in the daytime or breaking and entering in the nighttime, all arising from a single incident. The circuit court inaccurately advised the defendant that he was facing "three one-to-ten [year] charges" when, by law, the defendant could only have been convicted of one of the counts for which he was charged. *Id.* at 294, 241 S.E.2d at 816. This Court admonished that during a plea colloquy, "[w]hen a trial court explains the maximum possible sentence provided by law to a defendant, such explanation must be accurate and not confusing, misleading or coercive." *Id.* at 291, 241 S.E.2d at 814, syl. pt. 2.

Similarly, in *State ex rel. Gill v. Irons*, while accepting a guilty plea pursuant to a plea bargain, the trial judge incorrectly told the defendant that "the worst thing I could do to you . . . [when imposing sentence is] send you to the state penitentiary for a period of between 6 years and 30 years." *State ex rel. Gill v. Irons*, 207 W.Va. 199, 202, 530 S.E.2d 460, 463 (2000). In actuality, the applicable statutes provided for a sentence of ten to thirty years of incarceration. Our Court held that because the defendant "was not accurately informed of the possible sentence that could be imposed . . . [he] could not intelligently waive his constitutional rights and enter a plea of guilty." *Id.*

In addition to reviewing the plea colloquy, this Court will consider the advice given by defense counsel when ascertaining the voluntariness of a guilty plea. "The controlling test as to the voluntariness of a guilty plea, when it is attacked either on a direct appeal or in a habeas corpus proceeding on grounds that fall within those on which counsel might reasonably be expected to advise, is the competency of the advice given by counsel." *Sims*, 162 W.Va. at 212, 248 S.E.2d at 835, syl. pt. 2.[9]

A review of the appendix record finds no indication that the petitioner was ever advised that the applicable statutes only require ten years of incarceration for parole eligibility for his crime. To the contrary, both the court and the petitioner's counsel have admitted that they were mistaken about this requirement when the plea was taken. Counsel and the court just assumed that the statutes provided for parole eligibility after fifteen years. As such, it is clear that neither the court nor the petitioner's counsel accurately explained all that the petitioner was relinquishing with this plea deal. Although inadvertent, this failure

[9]The State argues that a habeas corpus hearing is necessary to develop a record regarding the advice of petitioner's counsel. However, this Court clearly held in *Sims* that issues regarding the voluntariness of a plea may be addressed on direct appeal. 162 W.Va. at 212, 248 S.E.2d at 835, syl. pts. 1 & 2. Moreover, a record has already been made on this issue, including the March 31, 2016, letter from the petitioner's former lawyer and the uncontested proffers made during the May 6, 2016, hearing.

6

to correctly advise the petitioner of the law carries a significant impact–it results in the petitioner serving an additional five years in prison before he may seek release on parole. Under these facts, we conclude that the petitioner's guilty plea was not knowing, intelligent, and voluntary.[10]

However, the remedy for this error is *not* to simply change the terms of the plea bargain and the circuit court's order, as the petitioner requests. "A recognized corollary to the principle that a guilty plea must be shown to have been intelligently and voluntarily entered is the rule that if the plea is based on a plea bargain which is not fulfilled or is unfulfillable, then the guilty plea cannot stand." Syl. Pt. 1, *State ex rel. Morris v. Mohn*, 165 W.Va. 145, 267 S.E.2d 443 (1980); *accord State ex rel. Gessler v. Mazzone*, 212 W.Va. 368, 572 S.E.2d 891 (2002) (plea agreement that could not be fulfilled was vacated in entirety). A plea agreement is subject to the principles of contract, with rights belonging to both the defendant and to the State. *See, e.g.,* Syl. Pt. 4, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998) ("When a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party."). Notably, the remedy in both *Riley* and *Gill*, discussed above, was to void and set aside the respective guilty pleas in their entirety. *See Riley*, 161 W.Va. at 295, 241 S.E.2d at 816; *Gill*, 207 W.Va. at 202, 530 S.E.2d at 463.

In the case sub judice, the State has demonstrated that even if the parties were mistaken about the statutory language, the fifteen-year parole eligibility provision was an essential element of the plea bargain. The provision was clearly specified in the written plea agreement and was repeatedly discussed during the plea/sentencing hearing. The petitioner is alleged to have committed brutal acts against his wife, and during the May 6, 2016, hearing, the prosecutor informed the circuit court that he would not have agreed to a plea bargain without ensuring that the petitioner would serve at least fifteen years in prison.

---

[10]Because we have concluded that the petitioner was given incorrect legal information when deciding to enter his guilty plea, it is unnecessary for this Court to address the petitioner's other claim on appeal: that it would constitute an illegal sentence for the circuit court to order a period of parole eligibility different from that specified by the Legislature. *See, e.g., State v. Wilson*, 226 W.Va. 529, 703 S.E.2d 301 (2010) (vacating conviction based upon plea agreement that called for imposition of sentence of incarceration contrary to statute); *Spencer v. Whyte*, 167 W.Va. 772, 775, 280 S.E.2d 591, 593 (1981) ("courts cannot set punishments that are inconsistent with the statutory penalties") *superceded by statute on other grounds as stated in State v. White*, 188 W.Va. 534, 425 S.E.2d 219 (1992); Syl. Pt. 3, *State ex rel. Nicholson v. Boles*, 148 W.Va. 229, 134 S.E.2d 576 (1964) (judgment rendered by court in criminal case must conform strictly to statute prescribing punishment).

Indeed, the record reflects that the prosecutor made two different plea offers to the petitioner, both of which would have required the petitioner to serve a minimum of fifteen years in prison before being eligible to seek parole.[11]

For the reasons set forth herein, we order that the petitioner's guilty plea and conviction are vacated and set aside. The case is remanded to the circuit court, where the parties are to be returned to their respective positions post-indictment but prior to the entry of the plea agreement.

Vacated and Remanded with Directions.

**REHEARING GRANTED:** February 7, 2018

**ISSUED:** April 13, 2018

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING AND WRITING SEPARATELY:**

Chief Justice Margaret L. Workman

Workman, Chief Justice, dissenting:

I respectfully dissent to the majority opinion. It is like swatting flies with a sledgehammer to decimate an entire plea agreement when a simple modification that complies with the law would suffice. The error that was made in stating parole consideration eligibility as being in fifteen rather than ten years was the error of the judge and both lawyers, *not* the defendant. Statutory law makes clear that the defendant is entitled to parole after ten years, rather than after fifteen years. If the correction represented an *increase* in the

---

[11]The other plea offer was for the petitioner to plead guilty to sexual assault in the first degree, which carries a penalty of fifteen to thirty-five years in prison. *See* W.Va. Code § 61-8B-3 (2006).

8

defendant's exposure to incarceration, I would find the majority's analysis more sound. Because this correction would actually *decrease* the defendant's ultimate exposure, however, there is no detriment to the defendant and no legitimate reason to completely dismantle an otherwise valid plea agreement, guilty plea, and conviction. The judge, the prosecutor, and the defense attorney (all legally trained) made this mistake of law, not the defendant. And yet a plea agreement legitimately entered is being taken away from the defendant years later. In oral argument, the State not only contended that it had a right to negotiate a plea agreement with terms in violation of statute, but that the defendant would likely be denied the same agreement if criminal proceedings have to go back to square one.

The ramifications of corrections to components of plea agreements were extensively addressed in a dissenting opinion in *People v. Williams*, 51 N.E.3d 528 (N.Y. 2016).[12] In particular, the opinion examined the question of correcting a plea agreement containing an illegal sentence where the corrected sentence would subject the defendant to an *increased* period of incarceration. The opinion observed that "we have never held that a court may impose a sentence that exceeds the minimum period expressly offered as an inducement for a guilty plea, and our case law supports the opposite conclusion." *Id.* at 540 (Rivera, dissenting). "Cases where a sentencing court 'fixed' an illegal sentence through imposition of a lawful sentence are distinguishable because none of them dealt with an *increase* in the minimum amount of time defendant could expect." *Id.* (emphasis supplied).

Recognizing the absence of detrimental impact upon the defendant's rights and expectations, the Court of Appeals of New York found correction of the plea agreement appropriate in *People v. Collier*, 5 N.E.3d 5 (N.Y. 2013). The defendant there pled guilty to two counts of robbery and agreed to a sentence of twenty-five years on the first count and five years on the second count, to run either consecutively or concurrently based on the court's discretion. After imposing the sentences to run consecutively, the defendant successfully argued that the five-year sentence was illegal. The court thereafter resentenced the defendant to concurrent terms of twenty-five and ten years, and this sentence was upheld on appeal as an appropriate correction because it "comported with defendant's reasonable expectation that he would receive a minimum determinate prison term of 25 years and a maximum determinate prison term of 30 years in exchange for his plea." *Id.* at 8.

County Court did not resentence defendant in conformity with the technical terms of the plea agreement with respect to the

_____

[12]The majority in *Williams* had determined that it was procedurally foreclosed from addressing the merits of defendant's claims on direct appeal based upon the defendant's failure to preserve his claims. *Williams*, 51 N.E.3d at 538.

fifth count of the indictment. But defendant, in fact, achieved the best outcome allowed by his plea since County Court, upon resentencing, reduced his maximum incarceratory term from 30 to 25 years in order to cure the illegality in the sentence originally imposed to resolve the fifth count. Thus, defendant clearly received the benefit of his bargain.

*Id*. The court held that "if the originally promised sentence cannot be imposed in strict compliance with the plea agreement, the sentencing court may impose another lawful sentence that comports with the defendant's legitimate expectations." *Id*.[13]

As explained in *Delgado v. People*, 105 P.3d 634 (Colo. 2005), "[s]entences become illegal in different ways, and depending on the nature of the illegality, certain illegal sentences can be corrected through resentencing and imposition of a legal sentence while other illegal sentences require that the judgment of conviction be vacated." *Id*. at 637; *see also Abeyta v. People*, 145 P.2d 884, 885 (Colo. 1944) (where sentencing court imposes sentence in excess of statutory maximum, sentence can be *corrected by removing excess*) (emphasis supplied). Where a court encounters the question of a remedy for an illegal sentence obtained through a guilty plea, "the sentencing court should first determine whether the illegal sentence can be corrected in such a manner so as to preserve the intent of the original plea agreement and give the defendant that for which he bargained." *Ostafin v. State*, 564 N.W.2d 616, 619 (N.D. 1997) (footnote omitted). "Correcting this sentence would not be that difficult." *Id.* at 619 n.3.

As the *Ostafin* court candidly stated, correcting the sentence is not difficult; a correction is certainly warranted in the present case. The error in this agreement regarded the issue of parole eligibility. As repeatedly observed, "[f]reedom, on parole from confinement in a penal institution prior to serving all of an imposed sentence, is a matter of legislative grace – it is a neither constitutionally guaranteed nor a God-given right." *Brewer v. Boles*, 261 F.Supp. 920, 921 (N.D. W.Va. 1967) (internal quotations omitted). The State argues that "[p]arole eligibility is not part of the statutorily-prescribed punishment for a crime; instead it is an 'act of grace[.]'" Indeed, this Court has recognized that " the parole statute is a matter of 'legislative grace' as opposed to punishment." *State v. Sears*, 196 W. Va. 71, 77 n.11, 468 S.E.2d 324, 330 n.11 (1996). But the determination of when parole

---

[13]"[T]he reasonable understanding and expectations of the parties, rather than technical distinctions in semantics, control the question of whether a particular sentence imposed violates a plea agreement." *Gammarano v. United States*, 732 F.2d 273, 276 (2nd Cir. 1984).

consideration can be made is not the State's right. Even if a restriction on eligibility for parole properly can be characterized as "a form of punishment,"[14] it defies reason to invalidate a plea agreement where the correction of the parole eligibility timing is not to the detriment of the defendant. The majority's decision to wholly vacate the guilty plea and conviction in this case is a colossal absurdity and a waste of judicial resources. I consequently dissent.

---

[14]"Because parole is a means of shortening a sentence, the restriction thereof necessarily operates as a form of punishment[.]" *Sears*, 196 W. Va. at 78 n.13, 468 S.E.2d at 331 n.13.